<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WAYNE DILLIN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CONSTRUCTION & TURNAROUND<br>SERVICES, LLC, et al.,<br><br>　　　　　Defendants. | Civil Action No. 14-8124 (ES)<br><br>OPINION & ORDER |

**SALAS, DISTRICT JUDGE**

Before the Court is a motion to dismiss by Defendants Construction & Turnaround Services, LLC ("CTS"), Integrated Service Company, LLC ("Inserv"), Phillips 66, Darrell Roberts,[1] and Alan Black (collectively, "Defendants").[2] (D.E. No. 5-5). The Court has considered the parties' submissions and decides this motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons below, Defendants' motion to dismiss is granted in part and denied in part.

### I.　　FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Wayne Dillin is an individual residing in Bayonne, New Jersey. (Compl. ¶1). At all times relevant to the Complaint, Plaintiff "was employed as a Lead Safety Director for Defendant, CTS." (*Id.*). Plaintiff was hired by CTS in approximately August 2013. (*Id.* ¶ 9).

---

[1] Defendant Darrell Roberts was improperly pled as "Darryl Roberts" in the Complaint. (*See* D.E. No. 1-2, Complaint ("Compl.") ¶ 5).
[2] Plaintiff originally named Wilbros Group, Inc. ("Willbros") as an additional Defendant, but the parties stipulated as to the dismissal of this Defendant on June 22, 2015. (D.E. No. 12; *see also* D.E. No. 13, Stipulation of Dismissal).

Between August 2013 and October 2013, Plaintiff reported to Defendant Roberts, Plaintiff's supervisor. (*Id.* ¶ 12). Plaintiff alleges various wrongful actions taken by Roberts throughout his employment.

For example, Plaintiff alleges that "Mr. Roberts required that Plaintiff keep a Twenty Dollar Bill behind [his] identification tag pursuant to a company policy, which allowed another employee to take the twenty dollar bill if they witnessed something wrong." (*Id.* ¶ 13). Plaintiff alleges that when he "complained to Mr. Roberts about this practice, Mr. Roberts required Plaintiff to keep a One Hundred Dollar Bill behind his identification tag or otherwise Plaintiff would be immediately terminated." (*Id.* ¶ 14).

In addition, Plaintiff alleges that Mr. Roberts "put a padlock on Plaintiff's office," "required Plaintiff to work near Mr. Roberts," and "refused to allow Plaintiff to lock the door to the bathroom when going to the bathroom"—all so that Mr. Roberts could "keep on [sic] eye" on Plaintiff. (*Id.* ¶¶ 15-16).

Plaintiff further alleges that Mr. Roberts "required Plaintiff to shave using a used razor blade with rust or blood on it" one afternoon due to the company policy prohibiting facial hair. (*Id.* ¶ 17). Plaintiff alleges that he had "shaved in the morning, but started to grow stubble in the late afternoon." (*Id.*).

Next, Plaintiff alleges that, on or about September 16, 2013, an employee named Randy Turner "failed an alcohol test, and Plaintiff was instructed to take [his] keys and drive him back to whatever motel he was staying at." (*Id.* ¶ 19).[3] Plaintiff alleges that he saw Turner back at the construction site later that day, and informed a supervisor. (*Id.* ¶ 21). He alleges that he was subsequently "instructed that if he valued his job, he would never say anything about it again."

---

[3] Plaintiff's duties include ensuring "that all individuals entering the construction site pass an alcohol test." (*Id*. ¶ 18).

2

(*Id.*).  Plaintiff further alleges that, later that night, another supervisor, Defendant Black, "told Plaintiff not to talk to anyone about the incident." (*Id.*).  Plaintiff informed Black "that he had already called OSHA and objected to the fact that other employees were banned for life from the construction site if they fail an alcohol test." [4] (*Id.*).  The next morning, Plaintiff was moved to a different location, away from his previous construction site.  (*Id.* ¶ 22).

Though Plaintiff does not specify a time or date, he alleges that Mr. Roberts "informed Plaintiff not to get winter clothes because Plaintiff would not be employed long enough to use them" and told Plaintiff that "the only good Yankee is a dead Yankee" while Plaintiff was wearing a Yankees baseball hat.  (*Id.* ¶ 23).  Plaintiff alleges that when he "asked if Mr. Roberts was referring to him . . . Mr. Roberts replied, 'you're a big boy, figure it out.'" (*Id.*).

Plaintiff alleges that, throughout his employment, he "repeatedly complained to Mr. Roberts and others that he was working more than 40 hours per week but not getting paid overtime." (*Id.* ¶ 24).

Finally, Plaintiff alleges that on or about October 10, 2013, "Mr. Roberts called Plaintiff on the walkie-talkie and told Plaintiff that there is an emergency four alarm gas meter going off in a section where Plaintiff used to work." (*Id.* ¶ 25).  Mr. Roberts allegedly told Plaintiff that it was an emergency and Plaintiff needed to respond immediately.  (*Id.*).  After Plaintiff arrived at the area, he learned that there was no emergency and Mr. Roberts did not return his calls.  (*Id.*). Plaintiff was then cited for a hard-hat violation by other employees, and when he said he was responding to an emergency gas meter alarm, they informed him that there was no such alarm. (*Id.*).  Mr. Roberts fired Plaintiff that day.  (*Id.* ¶ 26).

---

[4] OSHA stands for Occupational Safety and Health Administration, a federal agency charged with enforcing safety and health legislation.  *See* http://www.osha.gov.

Plaintiff initiated this action in the Superior Court of New Jersey, Law Division, Hudson County on October 7, 2014. (Compl.). Defendants removed the matter to this Court on December 31, 2014. (D.E. No. 1, Notice of Removal).

Plaintiff's Complaint includes four counts: (1) violation of the Conscientious Employee Protection Act ("CEPA"), (Compl. ¶¶ 27-32); (2) wrongful termination, (*id.* ¶¶ 33-36); (3) wrongful discharge in violation of the public policy of the state of New Jersey, (*id.* ¶¶ 37-39); and (4) hostile work environment, (*id.* ¶¶ 40-41).

On February 13, 2015, Defendants moved to dismiss all four counts of the Complaint for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 5-5, Defendants' Brief in Support of Motion to Dismiss Complaint in Lieu of Answer in Accordance with Federal Civil Rule 12(b)(6) ("Def. Mov. Br.")). Plaintiff responded on March 23, 2015. (D.E. No. 8, Reply Brief of Plaintiff in Opposition to Defendants' Motion to Dismiss Complaint in Lieu of Answer in Accordance with Federal Civil Rule 12(b)(6) ("Pl. Opp. Br.")). Defendants replied on March 27, 2015. (D.E. No. 9, Defendants' Brief in Reply to the Opposition Filed by Plaintiff in Regard to Defendants' Motion to Dismiss Complaint in Lieu of Answer in Accordance with Federal Civil Rule 12(b)(6) ("Def. Rep. Br.")). This motion is now ripe for resolution.

**II.   LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that a pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard announced by Rule 8 does not require detailed factual allegations, but it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, the plaintiff's short and plain statement of the claim must

"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 570).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Furthermore, when deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached [thereto], matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2011).

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245; *see also Ray v. First Nat'l Bank of Omaha*, 413 F. App'x 427, 430 (3d Cir. 2011) ("A

district court should not dismiss a pro se complaint without allowing the plaintiff an opportunity to amend his complaint unless an amendment would be inequitable or futile.").

### III.   DISCUSSION

#### A.   CEPA Violation

Count 1 of Plaintiff's Complaint alleges a CEPA violation. (Compl. ¶¶ 27-32). "The Legislature enacted CEPA to 'protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct.'" *Dzwonar v. McDevitt*, 177 N.J. 451, 461 (2003) (quoting *Abbamont v. Piscataway Twp. Bd. of Educ.*, 138 N.J. 405, 431 (1994)). Under CEPA, "[a]n employer shall not take any retaliatory action against an employee because the employee does any of the following . . . [o]bjects to, or refuses to participate in any activity, policy or practice which the employee believes (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ; (2) is fraudulent or criminal; or  (3) is incompatible with a clear mandate of public policy concerning the public health, safety, or welfare or protection of the environment." N.J.S.A. § 34:19-3c.

Accordingly, to adequately plead a CEPA violation, a plaintiff must allege "(1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity described in *N.J.S.A*. 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action." *Dzwonar*, 177 N.J. at 462 (citing *Kolb v. Burns*, 727 A.2d 525, 530 (N.J. Super. Ct. App. Div. 1999)). Importantly, a plaintiff alleging a CEPA violation does not need to prove an actual violation of law or public policy—rather, the plaintiff "must show that he or she 'reasonably believes' that to be the case." *Id.* (citing *Estate of*

*Roach v. TRW, Inc.*, 164 N.J. 598, 613 (2000)). In addition, "when a plaintiff brings an action pursuant to N.J.S.A. 34:19-3c, the trial court must identify a statute, regulation, rule, or public policy that closely relates to the complained-of conduct." *Id.* at 463. The Supreme Court of New Jersey has expressly instructed that "[t]he trial court can and should enter judgment for a defendant when no such law or policy is forthcoming." *Id.*

As a threshold matter, Defendants argue that Plaintiff's CEPA claim must be dismissed against Phillips 66 and Inserv because neither entity was Plaintiff's employer at any time. (Def. Mov. Br. at 5-6). They also argue that Plaintiff's CEPA claim must be dismissed against Roberts and Black because they cannot be held individually liable under the statute. (*Id.* at 14-15). In terms of Plaintiff's substantive allegations, Defendants argue that Plaintiff's CEPA claim fails against all Defendants because "an employee cannot sustain a CEPA claim when the CEPA claim arises from a duty required as part of a plaintiff's job duties." (*Id.* at 7) (citing *Massarano v. N.J. Transit*, 948 A.2d 653 (N.J. Super. Ct. App. Div. 2008)). Finally, Defendants argue that, "[e]ven assuming Plaintiff's CEPA claim concerning the failed alcohol test could survive *Massarano* . . . Plaintiff's objections were entirely unreasonable." (*Id.* at 7). The Court addresses each argument in turn.

First, the Court agrees with Defendants that Plaintiff's CEPA claim must be dismissed against Phillips 66 and Inserv. Plaintiff's Complaint only alleges that Plaintiff was an employee of Defendant CTS. (Compl. ¶ 9). The Complaint does not allege that Plaintiff was ever employed by Defendants Phillips 66 or Inserv, nor does the Complaint contain any allegations with respect to either of these entities. As a result, the Complaint does not "give the defendants fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, the Court notes that Plaintiff's opposition brief does not address

7

this issue or attempt to demonstrate how either Defendant is liable under CEPA. Accordingly, Plaintiff's CEPA claim is dismissed as to Defendants Phillips 66 and Inserv.

Also as a threshold matter, the Court considers Defendants' argument that Plaintiff's CEPA claim against Black and Roberts must be dismissed because "it is clear that an individual can only have individual liability in the rare circumstance that an employee or supervisor has acted in accordance with the employer's authorization or consent . . . [and] there are no allegations in the Complaint that Defendants Black or Roberts had the authority to act on behalf of CTS." (Def. Mov. Br. at 14-15). Indeed, "CEPA creates individual liability for agents of the employer, including supervisory employees who act with the authorization of the employer." *Palladino v. VNA of So. N.J.*, 68 F. Supp. 2d 455, 474 (D.N.J. 1999). However, "[a]lthough CEPA can impose individual liability on agents or employees of the employer entity, it 'will not impose liability on any employee, supervisor, commissioner, or attorney unless the plaintiff proves that the [individual] defendant took an adverse employment action against him because of his whistle blowing.'" *Brennan v. Palmieri*, No. 07-4364, 2008 WL 52337782, at *5-6 (D.N.J. Dec. 12, 2008) (quoting *Bowen v. The Parking Auth. of the City of Camden*, No. 00-5765, 2003 WL 22145814, at *23 (D.N.J. Sept. 18 2003)).

Here, Plaintiff's allegations are sufficient to plead a CEPA claim against Defendant Roberts, but not against Black. Plaintiff alleges that both Roberts and Black were Plaintiff's supervisors at CTS. (Compl. ¶¶ 5, 6). However, Plaintiff's only other allegation regarding Black is that he "told Plaintiff not to talk to anyone about the [drunkenness] incident." (*Id.* ¶ 21). Plaintiff does not include any specific allegations that Black retaliated against Plaintiff. Because Plaintiff does not allege that Black took any adverse employment action against him, Plaintiff's CEPA claim against Black must be dismissed.

By contrast, Plaintiffs' Complaint specifically alleges that Roberts was acting "pursuant to a company policy" in his actions against Plaintiff.  (*Id*. ¶ 13).  He further alleges that, following his report of the drunkenness incident, "Mr. Roberts fired Plaintiff."  (*Id.* ¶ 26).  This is sufficient to allege an individual CEPA claim against Defendant Roberts.  *See English v. Misys Intern'l Banking Sys., Inc.*, No. 05-2540, 2005 WL 1703199, at *4 (D.N.J. July 20, 2005) (permitting CEPA claim to proceed against an individual defendant where the plaintiff alleged that the defendant "unlawfully terminated [p]laintiff's employment" in an act of retaliation).

Next, the Court considers whether Plaintiff's CEPA claim fails against CTS and Roberts because the claim arises out of Plaintiff's job duties.  "[I]t is unquestioned that Plaintiff submits that as part of his job as lead safety manager, he was required to report failed alcohol tests to OSHA." (Def. Mov. Br. at 7).  Defendants proceed to argue that, under *Massarano*, "an employee cannot sustain a CEPA claim when the CEPA claim arises from a duty required as part of a plaintiff's job duties."  (*Id*. at 7).  Therefore, they argue, any CEPA claim arising from Plaintiff's report of a failed alcohol test is barred as a matter of law.

The Court disagrees.  The New Jersey Supreme Court recently addressed the precise question before the Court in *Lippman v. Ethicon, Inc.*, 2015 WL 4251063 (July 15, 2015).  There, the court expressly held that "watchdog employees"—"whose job duties entail knowing or securing compliance with a relevant standard of care and knowing when an employer's actions or proposed actions deviate from that standard of care"—are entitled to the whistleblower protections afforded by CEPA.  *Lippman*, 2015 WL 4251063, at *1.  Moreover, the court in *Lippman* specifically addressed *Massarano*, and noted that the "argument that *Massarano* has been relied upon as support for recognition of a job-duties exception to CEPA's broad protection to employees is . . . unavailing."  *Id.* at *12.  It further held that "[a]ny such reliance misperceives the case's

9

essential finding of no retaliation and results in an overextension of Massarano's significance . . . we specifically disapprove of any such extrapolation from the *Massarano* judgment." *Id.* With this instruction, the Court rejects Defendants' argument that Plaintiff's CEPA claim is barred because it arises out of his duty to report failed alcohol tests. To the contrary, the Court recognizes that that "watchdog employees are the most vulnerable to retaliation because they are 'uniquely positioned to know where the problem areas are and to speak out when corporate profits are put ahead of consumer safety.'" *Id.* at *4 (internal citation omitted).

Next, the Court considers Defendants' argument that Plaintiff has not adequately alleged a CEPA claim because his objections were "unreasonable." (*See* Def. Mov. Br. at 9). Defendants argue that "it cannot be said that Plaintiff held an objectively reasonable belief that his employer's conduct was in violation of any statute, regulation, rule or public policy merely because an individual failed an alcohol test earlier in the day and then was permitted to work at the construction site hours later in the day." (*Id.*). Defendants characterize Plaintiff's allegations as indicating mere "disagreement" with his employer. (*Id.*). In response, Plaintiff argues that he had an objectively reasonable belief that his employer's conduct "implicated a serious risk to public safety, a drunk employee on a construction site." (Pl. Opp. Br. at 7).

The Court agrees with Plaintiff. Viewed in the light most favorable to Plaintiff, the allegations in the Complaint plead an objectively reasonable belief that his employer's conduct violated a regulation, rule, or public policy. As an initial matter, Plaintiff's Complaint contains the specific allegation that Plaintiff "reasonably believed that the Defendants' actions were in violation of the law, public policy, and/or fraudulent or criminal in nature." (Compl. ¶¶ 19-21, 28-29). Plaintiff's more specific allegations also support this reasonable belief. Plaintiff alleged that "[p]art of Plaintiff's duties are to ensure that all individuals entering the construction site pass an

10

alcohol test." (*Id.* ¶ 18). Plaintiff further alleged that he called OSHA after he saw an individual who failed an alcohol test working at the construction site, indicating his belief that his employer's conduct violated federal guidelines or regulations. (*Id.* ¶ 21). Finally, there is ample case law support for the proposition that, in certain circumstances, an intoxicated employee may implicate the public policy concern of ensuring public safety. *See Urbanski v. Twp. of Edison*, No. L–4201–09, 2014 WL 183966, at *6 (N.J. Sup. Ct. App. Div. Jan. 17, 2014) (holding that an intoxicated policeman "presents a serious risk to public safety"); *Fischer v. G4S Secure Solutions USA, Inc.*, No. 10-6792, 2014 WL 2887803, at *13 (D.N.J. June 25, 2014) (holding that a jury could find a reasonable belief that intoxication of an armed security officer at a nuclear facility is a safety risk implicating public policy). In any event, CEPA does not require that the activity complained of "be an actual violation of a law or regulation, only that the employee 'reasonably believes' that to be the case." *Estate of Roach*, 164 N.J. at 613. Thus, for purposes of a motion to dismiss, Plaintiff has adequately alleged his reasonable belief that permitting an employee who failed an alcohol test to work on a construction site violated both federal regulations and public policy.

In sum, Plaintiff has adequately alleged all four elements of a CEPA claim. First, Plaintiff alleges that Defendants, among other things, "allow[ed] an intoxicated individual onto the construction site" and that Plaintiff "reasonably believed that the Defendants' actions were in violation of the law, public policy, and/or fraudulent or criminal in nature." (Compl. ¶¶ 19-21, 28-29). Second, Plaintiff alleges that he performed whistle-blowing activity by notifying his supervisor of the activity and calling OSHA. (*Id.* ¶¶ 29-30). Third, Plaintiff alleges that an adverse employment action was taken against him because he was fired. (*Id.* ¶¶ 26, 30). And finally, Plaintiff alleges that Defendants "unlawfully terminat[ed] Plaintiff's employment in retaliation for his objections to Defendants' conduct and informing OSHA of a violation." (*Id.* ¶ 30).

11

Defendants' motion to dismiss Plaintiff's CEPA claim is therefore denied as to Defendants CTS and Roberts.[5]

### B. Wrongful Termination Arising from Employment

Count 2 of Plaintiff's Complaint asserts a claim for wrongful termination. (*Id.* ¶¶ 33-36). Plaintiff's wrongful termination claim appears to arise out of his employment contract, which Plaintiff argues was violated in contravention of the implied covenant of good faith and fair dealing. (*Id.* ¶ 34; *see also* Pl. Opp. Br. at 8). The New Jersey Supreme Court has held that "an employee who is wrongfully discharged may maintain a cause of action in contract or tort or both. An action in contract may be predicated on the breach of an implied provision that an employer will not discharge an employee for refusing to perform an act that violates a clear mandate of public policy." *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58, 72 (1980).

Defendants argue that Plaintiff's wrongful termination claim must fail because "Plaintiff fails to point to any law, any policy or any provision of any employment contract which the Defendants have violated." (Def. Mov. Br. at 16). Plaintiff responds that this claim is sufficiently pled because Plaintiff "has set forth in his pleadings that (1) a contract existed between plaintiff and defendant; and (2) defendant breached the terms of that contract; or (1) an implied contract existed between plaintiff and defendant; and (2) defendant breached the covenant of good faith and fair dealing in the contract." (Pl. Opp. Br. at 8).

However, Plaintiff's claim for wrongful termination pursuant to his employment contract contains barebones allegations only—Plaintiff does not provide factual details in his Complaint or elsewhere about the nature of his contract, its terms, and why Defendants' actions constitute a

---

[5] Because the Court determines that Plaintiff's allegations regarding his report of an intoxicated employee are sufficient to plead his CEPA claim, this claim survives, and the Court does not consider Defendants' argument that Plaintiff's additional allegations are insufficient to plead this claim. (*See* Def. Mov. Br. at 11-14).

12

breach. "[C]onclusory or 'barebones' allegations will no longer survive a motion to dismiss." *Phillips*, 515 F.3d at 231 (further noting that "a plaintiff's Rule 8 obligation to provide the grounds for his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Accordingly, Plaintiff's claim for wrongful termination in Count 2 must be dismissed for failure to state a claim upon which relief can be granted.

### C. *Pierce* Wrongful Discharge

Count 3 of Plaintiff's Complaint alleges that Defendants wrongfully discharged Plaintiff in violation of the public policy of the state of New Jersey. (Compl. ¶ 38). The New Jersey Supreme Court has held that an employee may have a cause of action for wrongful discharge if the employee was discharged "contrary to a clear mandate of public policy." *Pierce*, 84 N.J. at 72. "To establish a case for common law wrongful discharge, the employee must identify the clear mandate of public policy and that the discharge itself was in violation of that public policy." *Brangan v. Ball Plastic Container Corp.*, No. 11-5470, 2012 WL 1332663, at *7 (D.N.J. Apr. 17, 2012) (citing *Tartaglia v. UBS PaineWebber Inc.*, 197 N.J. 81, 109 (2008)). With respect to the first requirement, an employee must identify a clear mandate of public policy—as it would have to do for a CEPA claim. *Id.* With respect to the second requirement, "that the discharge itself was in violation of that public policy," the employee must show "an expression by the employee of a disagreement with a corporate policy, directive, or decision based on a clear mandate of public policy derived from one of the sources . . . identified in *Pierce*." *Id.* (quoting *Tartaglia*, 197 N.J. at 109). "An actual or threatened complaint to an external agency or body is not required, though it would 'ordinarily be sufficient means of expression.' A direct complaint to senior corporate management would also most likely suffice. On the other hand, a 'passing remark to co-workers'

will not, nor will a complaint to an immediate supervisor." *Id.* (quoting *Tartaglia*, 197 N.J. at 109) (internal citations omitted).

As a threshold matter, Defendants argue that neither the individual Defendants Black and Roberts nor Phillips 66 and Inserv can be liable for this claim because Plaintiff has not alleged that either entity was his employer. (Def. Mov. Br. at 18). In addition, Defendants argue that the Court should dismiss Count 3 because Plaintiff has not identified a clear public policy and the claim is waived under CEPA. (*Id.* at 18-20). The Court addresses each argument in turn.

The Court agrees that Plaintiff's wrongful discharge claim must be dismissed against Defendants Phillips 66 and Inserv because, as discussed above, Plaintiff has not adequately alleged either Defendant was Plaintiff's employer. Additionally, the Court agrees with Defendants that Plaintiff may not assert a wrongful discharge claim against Roberts or Black. *See Bobo v. Wildwood Pub. Schools Bd. of Educ.*, 2014 WL 7339461, at *10 (D.N.J. Dec. 23, 2014) ("[B]ecause Plaintiff is only able to maintain a *Pierce* cause of action against his employer and not against individual employees, the Court will dismiss this claim as to [the individual d]efendants . . ."); *see also O'Lone v. N.J. Dep't of Corr.*, 712 A.2d 1177, 1180 (N.J. Super. Ct. App. Div. 1998) (holding that any *Pierce* action "would be against the public entity and not the individual defendants"). As a result, Plaintiff may only assert his wrongful discharge claim against Defendant CTS.

Next, the Court considers whether Plaintiff has adequately alleged a wrongful discharge in contravention of public policy. First, the Court has already determined that Plaintiff has alleged "disagreement with a corporate policy, directive, or decision based on a clear mandate of public policy." *See Tartaglia*, 197 N.J. at 109. Plaintiff alleges that he disagreed with his employer's

14

decision to permit an employee who had failed an alcohol test to work at a construction site. (Compl. ¶ 21).  Accordingly, the first element of Plaintiff's wrongful discharge claim is met.

Second, the Court determines that Plaintiff alleged that he provided a "sufficient expression of that disagreement," *see Tartaglia*, 197 N.J. at 109, by "bringing this to his supervisor's attention" and calling OSHA, (*see* Compl. ¶ 21).  As the Court in *Tartaglia* held, "a complaint to an outside agency will ordinarily be a sufficient means of expression."  *Id.*  Here, Plaintiff's complaint to OSHA, in conjunction with his report to his supervisor, is sufficient for purposes of Defendants' motion to dismiss.  Accordingly, the Court determines that Plaintiff has adequately pled his claim for wrongful discharge in contravention of public policy.

Finally, the Court considers Defendants' argument that Plaintiff's wrongful discharge claim is waived by the filing of his CEPA claim.  CEPA provides that "nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee . . . except that the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law." N.J.S.A. § 34:19-8.  Courts have construed this waiver to "prevent an employee from pursuing both statutory and common-law retaliatory discharge causes of action" because they "represent multiple or duplicative claims." *Young v. Schering Corp.*, 141 N.J. 16, 27-29 (1995).

However, the New Jersey Appellate Division has held that "the CEPA waiver provision must be interpreted to deem other causes of action waived only after a plaintiff has a meaningful opportunity to gather facts and choose his remedy based on information." *See Broad v. Home Depot U.S.A., Inc.*, 16 F. Supp. 3d 413, 417 (D.N.J. 2014) (citing *Maw v. Advanced Clinical Comm's*, 820 A.2d 105 (N.J. Super. Ct. App. Div. 2003)); *see also Brangan*, 2012 WL 1332663,

15

at *6 ("Plaintiff has not waived his common law claim by filing a CEPA claim as the decision between a CEPA and common law course of action is to be made after the completion of discovery."); *Rubin v. Sultan Healthcare, Inc.*, No. 08-6175, 2009 WL 1372272, at *4 (D.N.J. May 15, 2009) ("This Court predicts that New Jersey's Supreme Court would hold that the CEPA waiver provision would not require a plaintiff to elect her remedy at the pleading stage of the litigation but rather defer the waiver until the plaintiff has had an opportunity to conduct discovery.").

Accordingly, Plaintiff will ultimately be required to elect between his CEPA claim and common-law wrongful discharge claim, but it is not necessary for him to do so at this stage. Defendants' motion to dismiss Plaintiff's wrongful discharge claim is therefore denied as to Defendant CTS, and granted as to the remaining Defendants.

### D. Hostile Work Environment

Count 4 of Plaintiff's Complaint alleges a claim for a hostile work environment. (Compl. ¶¶ 40-42). Defendants characterize Plaintiff's hostile work environment claim as arising under the New Jersey Law Against Discrimination ("NJLAD"), and Plaintiff does not dispute this contention. (*See* Def. Mov. Br. at 21). Indeed, other courts in this district have determined that hostile work environment claims are subsumed by the NJLAD. *See Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 431 (holding claim "for retaliation and maintenance of a hostile work is precluded" by the NJLAD). Accordingly, the Court construes Plaintiff's hostile work environment claim as arising under this statute.[6]

---

[6] In addition, Plaintiff focuses on the "severe or pervasive" standard in arguing that his claim is adequately pled, (*id.* at 10), which is a standard used to determine whether a claim arises under the NJLAD. *See Lehmann v. Toys 'R' US, Inc.*, 132 N.J. 587, 604 (1993).

16

To allege a hostile work environment claim under the NJLAD, a Plaintiff must allege "(1) he is in a protected class; (2) he was subjected to conduct that would not have occurred but for that protected status; and (3) that it was severe or pervasive enough to alter the conditions of employment." *Lopez v. Lopez*, 997 F. Supp. 2d 256, 274 (D.N.J. 2014). Plaintiff's claim fails because, as Defendants point out, he has not alleged that he is part of a protected class or was subject to "an environment that would be deemed hostile because of a protected status." (*See* Def. Mov. Br. at 21). Because Plaintiff fails to allege an essential element of this cause of action, his claim for a hostile work environment must be dismissed.

## IV. CONCLUSION

For the reasons above, the Court concludes that Defendants' motion to dismiss is granted in part and denied in part.

Accordingly, it is on this 18th day of September 2015,

ORDERED that Defendants' motion to dismiss Count 1 of Plaintiff's Complaint is granted *without prejudice* as to Defendants Inserv, Phillips 66, and Alan Black; and it is further

ORDERED that Defendants' motion to dismiss Count 2 of Plaintiff's Complaint is granted *without prejudice* as to all Defendants; and it is further

ORDERED that Defendants' motion to dismiss Count 3 of Plaintiff's Complaint is granted *without prejudice* as to Defendants Inserv and Phillips 66 and *with prejudice* as to Defendants Alan Black and Darrell Roberts; and it is further

ORDERED Defendants' motion to dismiss Count 4 of Plaintiff's Complaint is granted *without prejudice* as to all Defendants.

SO ORDERED.

s/*Esther Salas*
**Esther Salas, U.S.D.J.**